Cordero, Juez Ponente
*1143 TEXTO COMPLETO DE LA SENTENCIA
El recurrente Francisco Levy Hijo, Inc. ("Levy"), oportunamente, recurre ante nos mediante Solicitud de Revisión Judicial alegando, en síntesis, que la Junta de Subastas de La Nueva Puerta de San Juan ("la Junta"), erró al designar como licitador agraciado a la empresa Old Dominion Demolition Corp. ("Old Dominion"). Según Levy, la propuesta sometida por Old Dominion debía ser descartada por haberse incluido una fianza de licitación (llamada en inglés "Bid Bond”) que es nula. No le asiste la razón. Veamos los hechos.
I
Levy reconoce que su propuesta fue más alta en precio que la de Old Dominion. No obstante, Levy reclama ser acreedor a la buena pro de la subasta por ser su oferta ($3,488,000.00), la mejor postura si se descarta la propuesta de Old Dominion ($3,377,770.00), por éste no haber cumplido con el requisito de afianzar satisfactoriamente el precio licitado. Según Levy, la fianza emitida por la Hartford Fire Insurance Co. ("Hartford"), no era válida porque: (a) Hartford no era una compañía autorizada para hacer negocios en Puerto Rico; (b) no se había sometido con la propuesta y la fianza un poder ("Power of Attorney"), en que se acreditara la autoridad del apoderado de la fiadora Hartford para comparecer en su nombre y obligarla; y (c) el apoderado de Hartford no cumplía con las disposiciones del artículo 22.010 del Código de Seguros, 26 L.P.R.A. see. 2201. 
II
En vista de estas serias alegaciones, este Tribunal solicitó la comparecencia del Comisionado de Seguros como amicus curiae (Regla 81(A) del Reglamento del Tribunal de Circuito de Apelaciones de 1996), para que éste ilustrara al Tribunal en cuanto a la validez de la fianza emitida por Hartford.
El Comisionado de Seguros, como amicus curiae, compareció mediante escrito de fecha 8 de enero de 1998 y expresó su posición en cuanto a la Validez de la fianza emitida por la Hartford, a favor de su principal, Old Dominion, con referencia a la Subasta Núm. 97-C-003 que se adjudicó el 6 de noviembre de 1997. Luego de un detallado y cuidadoso escrutinio de todos los documentos que forman parte del apéndice de este caso, al igual que los expedientes de la Oficina del Comisionado de Seguros, el amicus concluyó:

"(a) La aseguradora Hartford estaba debidamente autorizada por el Comisionado de Seguros de Puerto Rico para hacer negocios en Puerto Rico, efectivo el 24 de octubre de 1997.

(b) La fianza ("Bid Bond") número 0180 emitida por Hartford garantizando la propuesta de Old Dominion emitida el 29 de octubre de 1997, era válida en Puerto Rico. La misma fue otorgada por el Sr. Carlos E. Lugo Calixto, quien posee licencia de apoderado de la Hartford desde el 24 de octubre de 1997 y como tal, estaba autorizado para obligar a dicha aseguradora."

Inconforme con las anteriores conclusiones del amicus, Levy presentó una moción insistiendo que la fianza de licitación que formaba parte de la propuesta de Old Dominion era nula porque a la fecha de apertura de las propuestas, el 23 de octubre de 1997, ni Hartford ni su apoderado estaban autorizados por el Comisionado de Seguros para hacer negocios de seguros en Puerto Rico. O sea, que no fue hasta el día siguiente de la apertura de las propuestas, el 24 de octubre de 1997, que el Comisionado concluyó que estaban autorizados tanto Hartford como su apoderado para hacer negocios en Puerto Rico.
Levy insiste que la fianza es nula y cita parte de la sección 5 de las instrucciones especiales a los *1144 licitadores (pág. 13 del apéndice) para apoyar su posición en la siguiente forma:
"Bid security must be submitted in the amount of five (5%) percent of the bid on the form of a bid bond secured by a surety company listed in the current U.S. Treasury Circular 570 Surety Companies, acceptable on Federal Bonds, in the form attached as Attachment #SIB1 to these Special Instructions to Bidders,.... All sureties or bonding companies used must be licensed to do business in Puerto Rico.... A bid security furnished after the bid opening will not be accepted...."
Convenientemente, Levy dejó de citar una parte pertinente de la cláusula y añadiéndole la misma, lee como sigue:

"Bid security must be submitted in the amount of five (5%) percent of the bid in the form of a bid bond secured by a surety company listed in the current U.S. Treasury Circular 570 Surety Companies, acceptable on Federal Bonds, in the form attached as Attachment #SIB1 to these Special Instructions to Bidders,.... All sureties or bonding companies used must be licensed to do business in Puerto Rico.... If bids are submitted without a proper bid security, they be MAY returned to the bidder as a non-responsive bid. A bid security furnished after the bid will not be accepted....".

La anterior citada cláusula le da discreción a la Junta para devolverle o no devolverle al lidiador la propuesta, por no ser ésta una postura responsiva, si la fianza ("bid bond") no es apropiada. ("If bids are submitted without a proper bid security, they may be returned to bidder as a non-responsive bid.") En el caso ante nos, la Junta, en el ejercicio de su discreción, aceptó la fianza de licitación y aceptó la propuesta de Old Dominion, luego de habérsele corregido los defectos subsanables.
Es interesante, además, que en ningún momento Levy hace mención de la condición especial número 10 de las instrucciones a los licitadores, cuya cláusula lee:

"10. Right To Reject Any and All Bids

This solicitation does not commit Progressa to award a contract nor to pay any costs incurred in the preparation of bids or the procurement of supplies. Progressa reserves the right to reject any and all bids, to waive any informality or irregularities when Progressa believes it is in its best interest."

Es claro que, mediante la anterior cláusula, existe el derecho de descartar cualquier informalidad o irregularidad en la licitación sometida por cualquier licitador, cuando la Junta estime que le es en su mejor interés así hacerlo. Levy conocía la existencia de las cláusulas 5 y 10, previamente citadas, antes de someter su propuesta y aceptó las mismas. No puede ahora pretender, cuando no le es conveniente, ignorarlas.
III
La alegación de Levy respecto a que la fianza de licitación sometida por Old Dominion es nula ab initio, no procede. Ciertamente, el no someter una fianza obliga a la Junta a devolver la propuesta; pero ese no es el caso ante nos. En lo que respecta a defectos subsanables, las instrucciones especiales a los licitadores (Apéndice, pág. 13) claramente le conceden poder discrecional a la Junta de devolver cualquier propuesta que ellos consideren que no fue sometida con una fianza apropiada. Pero, como bien señala el Comisionado de Seguros, cualquier defecto que pudiera tener la fianza o el certificado de autoridad para la Hartford hacer negocios, quedó subsanado, retroactivo al 24 de octubre de 1997 y la misma no invalida la fianza aquí prestada. Contrario a lo dicho por Levy, la fianza sometida por Old Dominion no es nula ab initio, es anulable. "Un contrato de seguro otorgado por un asegurador no autorizado, en violación de este código, será anulable, excepto a instancias del asegurador." Art. 10.030, Código de Seguros, 26 L.P.R.A. see 1003.
El hecho de que la fianza fue inicialmente firmada y sometida con la propuesta por un apoderado de Hartford en el Estado de Virginia que no se había registrado en Puerto Rico, contrario a las disposiciones del artículo 22.010 del Código de Seguros, supra, no causa la invalidez de la fianza. El defecto era uno subsanable, sólo comporta que la fianza fuera anulable. Art. 10.030, supra. Lo importante es el hecho de que Hartford quedó registrada para hacer negocios en Puerto Rico un día después del acto de la apertura de las propuestas, el 24 de octubre de 1997, y la fianza quedó *1145 perfeccionada cuando la misma fue otorgada por Carlos E. Lugo Calixto, persona debidamente apoderada por Hartford y autorizada por el Comisionado de Seguros para actuar como apoderado desde el mismo 24 de octubre de 1997.
Valga consignar que en su escrito, el Comisionado de Seguros reconoció que el Sr. Carlos E. Lugo Calixto había solicitado la renovación de su licencia desde junio de 1997 y por inadvertencia, no se hizo a su debido tiempo. Eventualmente, se le expidió la licencia con vigencia de 24 de octubre de 1997. Obviamente, los problemas burocráticos que de vez en cuando sufren todas las ramas de gobierno, no pueden servir de base para declarar un contrato nulo, máxime cuando la ley permite subsanar el defecto provocado, en este caso, por la tardanza.
Irrespectivamente de la fecha en que se subsanaron los defectos de la fianza, la misma se retrotrae a la fecha en que se celebró el contrato. Nuestra ley reconoce que la confirmación por las partes purifica el contrato de los vicios de que adoleciera desde el momento de la celebración de dicho contrato. Art. 1265, Código Civil de Puerto Rico, 31 L.P.R.A. 3524. Además;

"where a bond has been amended so as to make it sufficient, the effect has been stated to make it valid from the beginning.

Similarly, a substitute or additional bond may be filed to take the place of an original bond which was fatally defective."

Appleman, Insurance Law and Practice, sec. 5333.
Levy cita el caso de Cancel v. Municipio de San Juan, 101 D.P.R. 296 (1973) en apoyo de su posición de que la fianza prestada por Old Dominion es nula. Dicho caso es completamente distinguible del presente caso. En Cancel, supra, el Tribunal Supremo de Puerto Rico resolvió que una fianza que le permitía a la aseguradora cancelar unilateralmente su garantía, sería un "nati-muerto", una fianza ineficaz, ya que la misma no brindaba garantía alguna. En consecuencia, el Tribunal determinó que el Municipio de San Juan no erró al rechazar dicha fianza. Esa no es la situación del caso ante nos. Aquí Hartford quedó comprometido y no puede relevarse unilateralmente de su obligación. Por lo tanto, Cancel, supra, no obra en favor de la posición que ante nos Levy promueve.
Levy cita también el caso Leafar Construction, Inc. v. Municipio Autónomo de Ponce, 96 D.T.A. 173. En Leafar, supra, un caso claramente distinguible del caso ante nos, el contratista sometió una fianza para garantizar su contrato con el municipio. Luego de comenzada y adelantada la obra, el Comisionado de Seguros emitió una certificación que indicaba que la aseguradora no estaba autorizada para contratar seguros de clase alguna en Puerto Rico. El contratista no sabía ese hecho y presentó evidencia del pago de la prima al agente de seguros. El Tribunal de Circuito de Apelaciones resolvió que el municipio tenía facultad para declarar nulo el contrato por adolecer del requisito de la prestación de una fianza. Contrario al caso que nos ocupa, aquí la aseguradora, oportunamente, verificó su obligación, se registró con la Oficina del Comisionado de Seguros y luego garantizó la obra a llevarse a cabo. Leafar, supra, tampoco ayuda a Levy.
Los otros casos señalados por Levy envuelven casos donde el licitador, luego de la apertura, trata de modificar su propuesta. En esos casos, los tribunales han sido consistentes en rechazar cualquier intento, no obstante la buena fe envuelta, de modificar las propuestas después del acto de la apertura.
IV
Debemos recordar que "[e]l propósito que persiguen los estatutos de esta naturaleza que requieren la celebración de subasta es que haya competencia en las proposiciones de manera que el Estado consiga que se realice la obra al precio más bajo posible. Además, al requerirse que la subasta y el contrato se adjudiquen al postor [responsable] más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. "Justiniano v. E.L.A., 100 D.P.R. 334, 338 (1971). En el caso de autos, la subasta se adjudicó a Old Dominion porque, además de ser entidad responsable y de cumplir con los requisitos para licitar, éste resultó ser el postor más bajo. No hay indicio alguno en este caso de que exista favoritismo, corrupción; extravagancia o descuido al otorgarse los contratos. Lo que sí existe es que hay un licitador cuya propuesta fue casi de *1146 $111,000.00 más alta que la del licitador agraciado y ahora trata, mediante un defecto técnico que fue oportunamente corregido, de provocar la nulidad de la buena pro. Debemos recordar que los preceptos legales que rigen las relaciones económicas entre entidades privadas y las diferentes ramas de gobierno están revestidas de gran interés público y aspiran a promover una sana y recta administración pública. Hatton v. Municipio de Ponce, _ D.P.R. _ (12 de enero de 1994), 94 J.T.S. 2, pág. 11430.
"En ausencia defraude, mala fe o abuso de discreción, ningún licitador tiene derecho a quejarse cuando otra proposición es elegida como la "más ventajosa". La cuestión debe decidirse a la luz del interés público y ningún licitador tiene un derecho adquirido en ninguna subasta. En realidad, aun su derecho a litigar la cuestión es uno severamente limitado." Great American Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911, 916 (1942).
Concluimos que no debemos premiar a un licitador que, mediante un mero tecnicismo, trata de obligar que se le adjudique una subasta que le costaría a los fondos públicos casi $111,000.00. Apoyar la posición de Levy significaría ir en contra del interés público, cosa que bajo los hechos de este caso, es totalmente improcedente.
V
Por los fundamentos antes expuestos, se confirma la decisión de la Junta.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 101
1. Además, Levy solicitó se paralizaran los procedimientos ante la Junta. Mediante resolución fundamentada de 22 de enero de 1998, decretamos sin lugar dicha solicitud por Levy no haber demostrado tener una probabilidad fuerte de prevalecer en los méritos al nivel apelativo; al no demostrar sufrir daños irreparables, según se define ese término en el caso de Misión Industrial de P.R. v. Junta de Planificación, _ D.P.R. _ (1997), 97 J.T.S. 34, pág. 732; y al no ofrecer prestar fianza supersedas, cosa que se le hubiera tenido que requerir. Peña v. Federación de Esgrima de P.R., 108 D.P.R. 147, 154-155 (1978).
2. El artículo 22.010 del Código de Seguros dispone:

"2201. Nombramiento, licencia a apoderado

(1) Un asegurador de garantía deberá presentar al Comisionado el nombramiento y el poder de todo personal autorizado por él para otorgar a su nombre instrumentos de garantía en Puerto Rico.

(2) Todos dichos poderes deberán cumplir con las leyes de Puerto Rico relativas a poderes en general y protocolización de los mismos (Ley Núm. 62, Ira. sesión ordinaria de 1937, 4 L.P.R.A. secs. 921 a 927) y estarán sujetos a las mismas.

(3) La licencia de apoderado no podrá expedirse en cuanto a ninguna persona que no reúna los siguientes requisitos:

(a) Residir de hecho en Puerto Rico y haber sido residente bonafide de Puerto Rico por no menos de un año inmediatamente antes de la fecha en que se solicita la licencia.

(b) Ser digna de confianza y competente.

(c) Tener por lo menos veintiún años de edad y haber terminado la escuela superior o su equivalente.

(d) Aprobar satisfactoriamente cualquier examen requerido con arreglo de la see. 911 de este título.

*1147
(4) Una vez recibido dicho poder en debida forma, y el solicitante cumpla con los requisitos de esta sección, el Comisionado expedirá a la persona así nombrada, una licencia como apoderado del asegurador. La licencia será por el término y estará sujeta a renovación, suspensión o revocación, según lo provee esta sección para las licencias de agentes de seguros. El derecho de licencia será al estipulado en la see. 701 de este título.

(5) Ninguna persona otorgará instrumentos de garantía a nombre de ningún asegurador en Puerto Rico, salvo en cumplimiento de las disposiciones de esta sección, incluyendo funcionarios del asegurador residentes en Puerto Rico, pero sin limitarse a éstos."